ETHEL V. ALLEN et al., Respondent, v. FRANK D. STOCKMAN et al., Appellant.

Kansas City Court of Appeals, May 23, 1910.

LANDLORD AND TENANT: Lease: Construction. A five year farm lease provided for an annual rental of $1200, payable in advance. The lease further provided that if the land were flooded after the corn was planted the tenant was to replant it, the crop was to be divided between the lessors and the lessee and the cash rental paid was to go for the next year's rent. This latter provision of the lease cannot be held to apply to a flood occurring after the planting in the fifth year, and it did not authorize the tenant to hold over after the fifth year.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis*, Judge.

AFFIRMED.

*R. B. Ruff, W. H. Meschede* and *Alf. F. Rector* for appellant.

In all cases of uncertainty, the tenant is most favored by law because the landlord, having the power of providing expressly in his favor, has neglected so to do; and on the principle, also, that every man's grant shall be taken most strongly against himself. Taylor's Landlord and Tenant (4 Ed.), sec. 81; Webb v. Dixon, 9 East 15; Folts v. Huntley, 7 Wend. R. 214; 2 Parsons on Contracts (7 Ed.), p. 631; McManus v. Fair Shoe & Clothing Co., 60 Mo. App. 216; Lieweke v. Jordan, 59 Mo. App. 619; Haarstick v. Shields, 11 Mo. App. 602; McCullock v. Holmes, 111 Mo. 455.

*T. H. Harvey* and *D. D. Duggins* for respondent.

BROADDUS, P. J.—This is a suit for unlawful detainer and originated in a justice court, where it was tried. Plaintiffs obtained judgment and defendants appealed to the circuit court where on trial anew plaintiffs again recovered judgment and defendants again appealed.

On the 27th day of February, 1904, the plaintiffs leased the premises in controversy to defendant Stockman. The terms of the lease was evidenced by the following writing:

"This contract made and entered into by and between S. W. Vanstone, I. E. Vanstone, E. V. & B. D. Allen, parties of the first part, and F. D. Stockman, party of the second part, all of Saline county, Mo., witnesseth:

"The said first parties have this day leased to the said second party the following described land, to-wit: The northwest quarter and the northeast quarter of section 12 and the northwest quarter of section 7, all in township 52, range 22, Saline county, Mo. Said to contain 310 acres more or less. Also the accretions thereto, for a term of three years, with the privilege of keeping the land five years. In case any one of said first-named parties sell the said land at the expiration of the said first named three years, the five years' lease to be void.

"In case said second party does not care to rent land longer than three years, said five years lease to be void. Said first parties to reserve the right to take off what timber they desire off of said land, said second party to have what timber he needs for his own use.

"In consideration thereof the said second party agrees to pay to the first parties the sum of $1200 per year, as follows: $400 to the said S. W. Vanstone, $400 to said I. E. Vanstone, and $400 to the said B. D. & E. V. Allen, payable on the first day of March in

advance each year.   First payment due March 1, 1904.

"In case of an overflow after corn is planted the said second party agrees to put all or as much of said land back in corn as soon as practical and to pay to the said first named parties two-fifths of said crop, shucked and cribbed, and the said first-named parties agree to let the said $1200 paid in advance for that year go for the next year's rent.   Said first parties agree to put up a two-wire fence on the west, south and east sides of said land, and said parties to have until September 1, 1904, to put up said fence.   No other improvements to be asked for, until the expiration of the five-year lease.

"Witness our hands and seals this 27th day of February, 1904.

"BUFORD D. ALLEN,
"ETHEL V. ALLEN,
"IDA E. VANSTONE, by
"ETHEL V. ALLEN, Attorney in Fact,
"S. W. VANSTONE,
"F. D. STOCKMAN."

The defendant Stockman went into possession of the premises on March 1, 1904, paid the $1200, the sum stipulated for, in advance.   He paid $1200 in advance also on March 1, 1905, March 1, 1906, March 1, 1907, and March 1, 1908.   In the spring of 1908, he planted corn on the land and he had also a crop of wheat growing on it.   During the latter part of May the Missouri river overflowed a great part of the land and destroyed much of the crops of corn and wheat growing on the part so overflowed.   The overflow left the land in such a condition as to prevent its being replanted in time to produce a crop of corn for that year.   The defendant gathered the remainder of the wheat and corn not destroyed and tendered to plaintiffs two-fifths of the same and demanded the return of $1200 rent, he paid on March the 1st for that year.   The plaintiffs refused to comply with the demand and also refused the tender

and claimed that they were entitled to the $1200 rent received for the year notwithstanding the overflow and destruction of the crops by the water.

The only issue in the case was whether the $1200 paid in advance by Stockman March 1, 1908, for the rent of that year, should apply under the terms of the contract in payment for another year's rent.

The court held that the provision in the contract, *viz.*: "In case of an overflow after the corn is planted, the said second party agrees to put all, or so much of said land back to corn as soon as practical and to pay to said first-named parties two-fifths of said crop, shucked and cribbed, and the said first-named parties agree to let the said $1200 paid in advance for that year go for the next year's rent"—did not apply to an overflow occurring during the fifth or last year of the lease; or in other words that the term of the lease could not be extended beyond five years.

We are of the opinion that the court was right in so holding. To hold otherwise would be extending the term of the lease beyond the time fixed by the contract. There is no ambiguity in the language of the contract as to the length of the duration of the lease. If it had been intended that in the event an overflow would occur in 1908 and destroy the growing crops, the lease would be extended for another year, it should have been provided for in the contract.

The plaintiffs insist that defendants' contention amounts to an insertion in the contract of a provision to the effect: "That if an overflow should occur on or during the last year of the lease, then the time of the lease is extended for another or additional year." To sustain defendant we must find at least that is what the contract means.

The lease was unconditionally for three years, conditionally for five years. The language used is "for a term of three years with the privilege of keeping it for five years." Now it seems to us quite plain that when

the parties provided that if the crops should fail by reason of an overflow of the Missouri river the rent paid for that year should be treated as a payment for the rent for the ensuing year, they meant a year during the existence of the lease. They had anticipated the danger to crops from overflows and for all that they knew one was as possible during the last year of the term as any other year thereof, yet they made no provision by words in the contract in such a contingency that the lease was to be extended for another year. We believe the judgment should be affirmed and it is so ordered. All concur.